**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose Guadalupe GUTIERREZ,**
**Defendant–Appellant.**

**No. 93–1296.**

United States Court of Appeals,
Tenth Circuit.

Jan. 19, 1995.

Rehearing Denied Feb. 13, 1995.

8. Chief Judge Seymour is recused.

Brian K. Holland, Holland, Seelen & Pagliuca, Denver, CO, for defendant-appellant.

John M. Hutchins, Asst. U.S. Atty. (Henry L. Solano, U.S. Atty., with him on the brief), Denver, CO, for plaintiff-appellee.

Before BALDOCK and EBEL, Circuit Judges, and BROWN,* District Judge.

WESLEY E. BROWN, District Judge.

Appellant Jose Gutierrez was convicted by a jury of one count of conspiracy to possess with intent to distribute cocaine (21 U.S.C. §§ 846, 841(b)(1)(A)) and one count of money laundering (18 U.S.C. § 1956(a)(1)). He was

---

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

one of eleven individuals named in a second superseding indictment. Appellant and a co-defendant, Laina Young, were the only two defendants to proceed to trial. Ms. Young's appeal is decided in a companion case, *United States v. Young*, 45 F.3d 1405 (10th Cir. 1995).

The evidence at trial showed a large scale conspiracy to distribute cocaine headed by a man named Ernest Evans. The government presented evidence showing that appellant was a part of the conspiracy and that he was involved with Evans in the distribution of cocaine. There was also evidence that appellant received a wire transfer of $9,000 at Western Union in Los Angeles on June 29, 1989, which was part of a total transfer of $45,000 representing payment for cocaine. Appellant raises several issues on appeal. For the reasons set forth herein, we affirm the judgment of the district court.

*Speedy Trial Act*

Appellant first contends that his rights under the Speedy Trial Act were violated and that the indictment against him should have been dismissed. The Speedy Trial Act generally requires that a criminal trial must commence within 70 days of the latest of a defendant's indictment, information, or appearance. 18 U.S.C. § 3161(c)(1). Certain periods of delay are excluded, however, in computing the time within which a trial must commence. *See* § 3161(h).

We have addressed a similar claim raised by one of Mr. Gutierrez' co-defendants in *United States v. Young*, 45 F.3d 1405 (10th Cir.1995). For the same reasons set forth in *Young* we conclude that Mr. Gutierrez has failed to meet his burden of showing that the speedy trial clock was running prior to November 2, 1992. We thus turn to the remaining period—from November 2, 1992 to the date of trial, June 7, 1993, for the purpose of determining whether more than seventy days of non-excludable delay elapsed in that period.

Based on the record before us, it appears that only fourteen days of non-excludable delay elapsed between November 2, 1992, and June 7, 1993. Delays resulting from pretrial motions are generally excluded from the speedy trial seventy day time limit, as are reasonable periods of delay pertaining to co-defendants joined for trial. *See* § 3161(h) subs. (1)(F), (7). On July 6, 1992, Mr. Gutierrez filed a motion asking the district court to hold a *James* hearing for the purpose of determining the admissibility of alleged co-conspirators' statements. Vol. 1, Doc. 10. The trial court heard the parties' arguments concerning the need for a *James* hearing on November 4, 1992, and granted the request on November 10, 1992. Vol. 1, Doc. 46. The court initially set the *James* hearing for February 25, 1993, but it was later moved up to February 11, 1993, at which time the court heard evidence and issued its ruling. Vol. 9. We conclude that this period—from the filing of the motion through the time of the actual *James* hearing—is excludable delay under § 3161(h)(1)(F). We reject appellant's argument that the period of exclusion caused by the motion ended on November 10, 1992, when the court granted appellant's request for a hearing. The *James* hearing on February 11, 1993 was clearly a "hearing ... on such motion" within the meaning of subsection (h)(1)(F) and all of the time between the filing of the motion and the conclusion of the hearing is excludable under (h)(1)(F). *See United States v. Bermea*, 30 F.3d 1539, 1568 (5th Cir.1994) (Defendants' *James* motions tolled the speedy trial clock.)

Another motion resulting in excludable delay was filed by Keith Rutherford, a co-defendant of Mr. Gutierrez. The record before us does not show the date this motion was filed, but it does show that the motion was pending and came on for a hearing on February 11, 1993. Due to a request to withdraw by one of Mr. Rutherford's attorneys, however, his motion to suppress was continued. Vol. 8 at 35–40. Although the motion was initially set for hearing in December 1992, that hearing was continued and the motion remained pending until May 6, 1993, when Rutherford entered a guilty plea. *See* Vol. 16 at 30. Under § 3161(h)(7), we conclude that this period of delay (from prior to February 11, 1993, up to the disposition of the motion on May 6, 1993) is excludable time as to Mr. Gutierrez.

In addition to the foregoing, the record shows that Mr. Gutierrez filed a motion for a continuance on May 12, 1993, which was ruled on by the court on May 17, 1993, and a motion to dismiss filed May 27, 1993, and ruled on by the court on June 7, 1993. Each of these periods is excludable under § 3161(h)(1)(F). Thus, taking into account all of the excludable delay shown by the record, only fourteen days ran on the speedy trial clock between November 2, 1992, and the date of trial. Accordingly, we find that the district court did not err in refusing to dismiss the indictment against the defendant.

*Admission of Statements of Alleged Co-Conspirators*

■ Appellant's next argument is that the district court erred in admitting into evidence hearsay statements of an alleged coconspirator. Appellant objected when Phil Evans, who pleaded guilty to being a member of the conspiracy alleged in the indictment, testified that his brother Ernest Evans had told him that Jose Gutierrez had a Mexican connection that supplied Ernest with drugs to keep his business going. Vol. 21 at 745–46.[1] The trial court permitted the statements into evidence. Appellant contends that these statements were hearsay because they were not "in furtherance of" the alleged conspiracy as required by Fed.R.Evid. 801(d)(2)(E).

■ Our review of a district court's finding that a statement was in furtherance of a conspiracy is limited; we may set aside such a finding only if it is clearly erroneous. *United States v. Perez,* 989 F.2d 1574, 1580 (10th Cir.1993) (en banc). When determining whether a statement was made in furtherance of a conspiracy we focus on the declarant's intent in making the statement. *United States v. Roberts,* 14 F.3d 502, 515 (10th Cir.1993). The determination must be made by examining the context in which the statement was made. *Id.* In general, mere narratives between coconspirators or narrative declarations of past events are not "in furtherance," while statements of future intent that set transactions to the conspiracy in motion and maintain the information flow among coconspirators meet the "in furtherance" requirement. *Id.*

We cannot say that the district court's finding that this statement was in furtherance of the conspiracy was clearly erroneous. Taken as a whole, the record contains sufficient circumstantial evidence from which one could reasonably conclude that Ernest Evans made the statement to Phil Evans with the intention of furthering conspiratorial objectives. "Statements made to keep coconspirators abreast of an ongoing conspiracy's activities satisfy the 'in furtherance of' requirement." *United States v. Yarbrough,* 852 F.2d 1522, 1536 (9th Cir.), *cert. denied,* 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988), (cited in *Roberts, supra*). A permissible inference may be drawn that Ernest Evans informed Phil Evans of Gutierrez's role in the conspiracy to keep Phil, whom Ernest hired on several occasions to make deliveries of cocaine (Vol. 21 at 739), informed of the ongoing activities of the conspiracy. Phil Evans had knowledge that Ernest was having problems with suppliers, *id.* at 746, and the evidence would support a conclusion that the statement was made to indicate to Phil that the deliveries of cocaine would continue. Appellant's extended argument that Ernest Evans did not consider his brother trustworthy does nothing to change this result. Regardless of whether Ernest Evans trusted Phil to transport cocaine by himself, he nevertheless hired Phil to transport shipments with other people and kept him informed of certain material aspects of the conspiracy. We find no error in the trial court's ruling.

■ Similarly misguided is appellant's argument that his sixth amendment rights were violated by the failure of the govern-

---

1. Appellant also contends that the court erroneously admitted hearsay statements concerning "identification of an alleged partner," Aplt. Br. at 32, but he does not identify any such objectionable statements. Of course, testimony by Phil Evans that he saw appellant and Ernest Evans counting large amounts of cash does not constitute hearsay. *See* Vol. 21 at 747. Moreover, contrary to appellant's assertion that this was the only such testimony against him, the record shows that Stephanie Howard also testified that Ernest Evans told her that appellant was his partner in the drug business. Vol. 20 at 510. No objection was raised to Ms. Howard's testimony on this point.

ment to show that the declarant of the statement, Ernest Evans, was unavailable. The Supreme Court rejected such a requirement in *United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986).

*Motion for a Continuance*

■ Appellant next argues that the district court erred in denying a motion for continuance filed May 12, 1993. He contends that the court's refusal to postpone the trial adversely affected defense counsel's ability to render effective assistance. Appellant points out that Keith Rutherford and Phil Evans entered guilty pleas approximately one month before trial and agreed to testify on behalf of the government. Appellant contends that the trial court's denial of his motion for a continuance left his attorney insufficient time to investigate impeachment of these witnesses.

Appellant recognizes that we will reverse the trial court's ruling only upon a showing of a clear abuse of discretion resulting in manifest injustice. *United States v. Pearson,* 798 F.2d 385, 388 (10th Cir.1986). It can always be argued that more time to prepare would have aided the defense, but appellant has identified no specific reason why a period of nearly one month was inadequate to prepare for the testimony of these witnesses. We see no indication that the trial court abused its discretion by denying the request for a continuance.

*Sufficiency of the Evidence*

■ Appellant argues that the evidence was insufficient to support the guilty verdicts. In reviewing such a claim, "we are bound to view the proof presented in the light most favorable to the government to ascertain if there is sufficient substantial proof, direct and circumstantial, together with reasonable inferences to be drawn therefrom, from which a jury might find a defendant guilty beyond a reasonable doubt." *United States v. Sullivan,* 919 F.2d 1403, 1431 (10th Cir.1990).

Having reviewed the entire record, we find that the evidence is sufficient to support the verdicts. The testimony of Keith Rutherford, Stephanie Howard, and Phil and Sam Evans, among other evidence, clearly provided a sufficient basis for the jury to conclude that appellant knowingly conspired with several others to possess with intent to distribute cocaine. For example, Rutherford testified that he saw appellant swap money for cocaine with Ernest Evans and that appellant brought bricks of cocaine to Rutherford's house. Vol. 19 at 290; 293. Several witnesses testified that they saw appellant counting large amounts of cash with Ernest Evans. Apparently recognizing that this evidence is sufficient, appellant resorts to arguing that "had he been provided with the continuance requested, the testimony of Keith Rutherford and Phil Evans would not have been accepted by the jury." Aplt. Br. at 46. This is sheer conjecture, however, and provides no cause for disturbing the jury's verdict. Similarly unpersuasive is appellant's contention that the evidence was insufficient to support the money laundering conviction. Evidence of appellant's involvement in the drug conspiracy together with the circumstances surrounding his receipt of a wire transfer for Ernest Evans provided a sufficient basis for the jury to conclude that appellant knew the wire transfer represented the proceeds of some form of illegal activity and that he engaged in the transaction with the intent to promote the carrying on of the conspiracy to distribute cocaine. *See* 18 U.S.C. § 1956(a)(1)(A).

*Calculation of Offense Level*

■ Appellant's final argument is that the trial court erred in determining his offense level under the sentencing guidelines. The court found that appellant's base offense level was 34, which was based on a determination that appellant was responsible for a conspiracy to possess at least 15 but less than 50 kilograms of cocaine. Vol. 25 at 12. Appellant argues that he should only be held responsible for a conspiracy involving 5 kilograms of cocaine.

Appellant's argument is based upon USSG 1B1.3(a)(1)(B), which requires that in the case of a jointly undertaken criminal activity, the base offense level shall be determined on the basis of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, . . ." Ap-

pellant does not specifically challenge the trial court's finding that the scope of the conspiracy in this case involved more than 15 kilograms of cocaine (an amount clearly supported by the evidence at trial), but he maintains that he played a minor role in the conspiracy and that there was no evidence from which the court could properly conclude that he could have reasonably foreseen the possession of such quantities by other conspirators.

The trial court's calculation of appellant's offense level is supported by the evidence. As an initial matter, appellant ignores the evidence at trial that he personally possessed large amounts of cocaine. *See* USSG § 1B1.3(a)(1)(A) (offense level is determined based on all acts committed by defendant). Moreover, in arguing that he could not have foreseen the distribution of more than 15 kilos of cocaine by Ernest Evans, appellant simply disregards the government's evidence of his substantial involvement in the conspiracy. For example, Keith Rutherford testified that he saw appellant swap money for drugs with Ernest Evans (Vol. 19 at 290), that he saw appellant count large amounts of cash with Evans—including over $700,000 on one occasion (*id.* at 290–91), and that he saw appellant bring bricks of cocaine to his house—six kilos on one occasion. Stephanie Howard testified that appellant and Ernest Evans counted money she had picked up at Western Union and that appellant commented that he had to get the money together so they could make their next deal. Vol. 20 at 508–09. She also heard Ernest Evans say that appellant and he were partners in the drug business. *Id.* at 510. Sam Evans testified that when he delivered $9,000 to Ernest Evans, Evans said that he had to give the money to Jose, *id.* at 645, and that he couldn't give Sam any money because he had to give the money to Jose Gutierrez to pay off people for the drugs. *Id.* at 646. There was testimony that Ernest also told Sam that the reason for a delay in a shipment of cocaine that Sam had agreed to deliver was that Jose hadn't gotten back in touch with him. Vol. 20 at 669.

There is other evidence in the record supporting the trial court's determination, but the foregoing is sufficient to show that the court's determination of the base offense level was not clearly erroneous. For the same reasons, appellant's argument that the trial court erred in refusing to award him a four level decrease as a "minimal participant" is without merit.

*Conclusion*

The judgment of the district court is AFFIRMED.