FILED
United States Court of Appeals
Tenth Circuit

March 14, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| OLOYEA D. WALLIN, | |
| Plaintiff - Appellant, | No. 07-1144 |
| | (No. 03-cv-02319-WDM-MJW) |
| v. | |
| CMI, KIM DEMPEWOLF, RYAN BRADLEY, MARYE DEMING, AARON, JASON COLLIDGE, SANDRA CANNON-GRANT, CHARLES ABBOTT, MONIQUE M. MARTEL, R.N., F.N.P., | (D. Colo.) |
| Defendants - Appellees, | |
| OLOYEA D. WALLIN, | |
| Plaintiff - Appellant, | |
| v. | No. 07-1146 |
| | (No. 04-cv-00215-WDM-MJW) |
| HOYT BRILL, MS. WEDERSKI, MR. RAND, MS. HILL, MS. JANE DOES I-IV, MS. FRANK, RENEE BAIR, MR. JOHN DOES I-III, JOE ORTIZ, ANTHONY A. DECESARO, | (D. Colo.) |
| Defendants - Appellees. | |

**ORDER AND JUDGMENT**[*]

_____

[*] This order and judgment is not binding precedent except under the doctrines of the law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **HENRY**, Chief Judge, **TYMKOVICH**, and **HOLMES**, Circuit Judges.[**]

Oloyea D. Wallin, a Colorado prisoner proceeding pro se, filed complaints under 42 U.S.C. § 1983 against various employees and officials of the Centennial Community Transition Center (CCTC) (filed in 2003, 10th Cir. Case No. 07-1144) and of the Kit Carson Correctional Center (filed in 2004, 10th Cir. Case No. 07-1146). In each, a lengthy series of district court proceedings followed before the same magistrate judge. The magistrate judge recommended dismissal of all the claims, and the district court adopted this recommendation. We have consolidated these cases for our consideration. Mr. Wallin also seeks to proceed in forma pauperis (IFP). We grant Mr. Wallin IFP status, and, for the following reasons, we affirm the district court's grants of summary judgment to defendants in each action, and dismiss all outstanding motions. We will discuss each filing in turn.

## I. CASE. NO. 07-1144

A. Background

Mr. Wallin entered Corrections Management Incorporated's ("CMI") Centennial Community Transition Center ("CCTC") on August 22, 2001, serving a four-year community corrections sentence for the Colorado state law offense of menacing. In his

---

[**]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* FED. R. APP. P. 34(f) and 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

complaint, he alleged that he was terminated from the CCTC program in violation of his Fourteenth Amendment right to due process (claims 1 and 2), and his Eighth Amendment claim to be free of cruel and unusual punishment (claims 3 and 4). In his first Eighth Amendment claims, he alleged that "in September 2001, he was forced to do labor chores around the facility every day until he pled guilty to the charged violation." Rec. vol. I, doc. 13, at 2. In the second Eighth Amendment claim, Mr. Wallin contended that he suffered physical harm as a result of the administration of the drug Anatabuse, prescribed to deter the consumption of alcohol. He maintained that the forced administration of the drug violated his right to be free of cruel and unusual punishment under the Eighth Amendment. Mr. Wallin also argued that there was no evidence he suffered from any substance abuse. The district court dismissed Mr. Wallin's due process claims (claims 1 and 2) as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). As to the Eighth Amendment claim regarding forced labor (claim 3), the district court concluded that the claim "in actuality [is] an underlying claim to his denial of the due process claim in his resentencing in November 2001." Rec. vol. I, doc. 13, at 3. Applying *Heck*, the court dismissed that claim as well, leaving only the Anatabuse claim (claim 4) as the surviving claim.

The district court allowed Mr. Wallin to file an amended complaint in which he again alleged that the prison officials forced him to take Anatabuse against his will. In addition, he raised various state law claims, including negligence, intentional infliction of emotional distress, and medical malpractice. Mr. Wallin also contended that he suffered

3

from headache, fatigue, sharp chest pain, anxiety, dehydration, severe sweating, mood changes, and dizziness as a result.

Defendants CMI, Dempewolf, Deming, and Coolidge filed motions for summary judgment, and defendant Martel filed a motion to dismiss.[1]  Mr. Wallin sought an extension of time to respond to the motions for summary judgment, which the magistrate judge denied.[2]  The defendants challenged Mr. Wallin's exhaustion of the claims and also challenged the merits.  The defendants submitted a report stating that typical adverse effects from Anatabuse include the manifestations noted by Mr. Wallin.  According to the report, these reactions are short-lived and manifest only when the patient consumes alcohol with the medication.  Specifically, "[t]hese uncomfortable symptoms provide the

---

[1]  Pursuant to the automatic stay provision of 11 U.S.C. § 362, proceedings in this appeal have been abated in Case No. 07-1144 as to appellee Monique Martel only, pending further order of this court.  Accordingly, we decide the issues presented by Mr. Wallin's appeal in Case No. 07-1144 with respect to the all the defendants except Ms. Martel, and stay further proceedings in the appeal with respect to her. *See Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1450 (10th Cir. 1997); *Croyden Assocs. v. Alleco, Inc.*, 969 F.2d 675, 677 (8th Cir.1992) (staying further proceedings with respect to debtor, but deciding the issues raised on appeal with respect to the co-defendants).  We direct Ms. Martel to advise this court of the status of her bankruptcy case, including the status of the bankruptcy stay, in accordance with the court's order filed Jan. 14, 2008.

[2]  The magistrate judge also entered various procedural rulings to which Mr. Wallin objected: (1) he denied Mr. Wallin's motion to reconsider a previous ruling that directed the prison in which he was then incarcerated to allow him to obtain photocopies, provided that Mr. Wallin paid for them; (2) he denied Mr. Wallin's motion to compel the CMI Group to respond to interrogatories; (3) he granted a motion for a protective order that allowed the defendants to be served without revealing their full names and addresses to Mr. Wallin; and (4) he ordered Mr. Wallin to comply with various orders regarding filing fees.  The district court also dismissed the amended complaint against defendants Abbott and Cannon-Grant, as they had not been served.

principles for impeding the consumption of alcohol." Rec. vol. II, doc. 239-6, at 2-3.

The magistrate judge granted the motion to dismiss for failure to exhaust administrative remedies, and, in the alternative, he granted summary judgment to all defendants on the merits, because the record did not support an Eighth Amendment claim of deliberate indifference to Mr. Wallin's medical needs. The magistrate judge noted that on three occasions Mr. Wallin agreed in writing to his CCTC Program Plan, which included the Anatabuse treatment. Mr. Wallin had suffered from substance abuse, and that a treatment plan goal was to "[m]aintain sobriety while in community corrections." Rec. vol. III, doc. 297, at 12. The magistrate judge recommended the district court decline to exercise supplemental jurisdiction over Mr. Wallin's state law claims against all parties, and that the court dismiss them without prejudice. Finally, the magistrate judge addressed the claims against Ryan Bradley, Mr. Wallin's case manager, who was not served. The magistrate judge recommended that the district court dismiss the Eighth Amendment claim against Mr. Bradley with prejudice and the state court claims against him without prejudice.

Mr. Wallin filed objections to the magistrate judge's report, which the district court denied. The district court thus overruled all of Mr. Wallin's objections and granted the motion for summary judgment filed by the defendants CMI, Dempewold, Demin, and Coolidge, and dismissed Mr. Wallin's Eighth Amendment claim with prejudice as to all defendants. The court dismissed all state court claims without prejudice. The court denied defendant Martel's motion to dismiss and defendant Bradley's motion to dismiss

5

as moot, and dismissed Mr. Wallin's outstanding motions as moot. The district court also concluded that Mr. Wallin's "repeated failure to comply" with several filing fee orders provided an alternative ground for dismissal. Rec. vol. III, doc. 318, at 8.

Before this panel, Mr. Wallin contends that the district court erred when it granted summary judgment because (1) the magistrate judge abused his discretion when he denied Mr. Wallin's motion for an extension of time to file a response to CMI's motion for summary judgment. He also argues that the district court erred and/or abused its discretion when it (2) concluded Mr. Wallin did not exhaust his administrative remedies; (3) concluded that Mr. Wallin did not state a claim of deliberate indifference under the Eighth Amendment; (4) dismissed Mr. Wallin's complaint for failure to comply with filing fees; (5) granted the protective order to defendants; and (6) denied Mr. Wallin's motion to compel a response to his interrogatories.

B. Discussion

1. Standard of review

Our jurisdiction arises under 28 U.S.C. § 1291. We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant. *Hammons v. Saffle*, 348 F.3d 1250, 1254 (10th Cir. 2003). "Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; FED. R. CIV. P. 56(c). We review procedural rulings solely for an abuse of discretion. *See, e.g.*, *United States v. Gutierrez*, 48 F.3d 1134, 1138 (10th Cir. 1995). Because Mr. Wallin has proceeded pro

6

se, we construe his pleadings and other papers liberally, applying a less stringent standard than formal pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n. 3 (10th Cir. 1991).

2. Analysis

"In order to state a cognizable claim [that he has been denied adequate medical treatment in violation of the Eighth Amendment], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Court clarified the Eighth Amendment's deliberate indifference standard under *Estelle*. "[O]nly the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment." *Wilson*, 501 U.S. at 297 (emphasis in original). In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Court reiterated and emphasized the subjective requirement for finding a constitutional violation. *Id.* at 837 (requiring conscious disregard of a known, serious risk to inmate health or safety to establish deliberate indifference).

Having reviewed the record, the relevant law, and Mr. Wallin's filings in this appeal, and concluding that none of his arguments have merit, we affirm the grant of summary judgment to defendants for substantially the same reasons stated by the district court.

## II. CASE NO. 07-1146

A. Background

Mr. Wallin's claims in this action are based on his assertion that he was denied appropriate and timely medical treatment for an ankle injury he sustained on January 8, 2002, and for an injury to the big toe on his left foot, which he maintains he sustained shortly thereafter.

As the magistrate judge observed, Mr. Wallin received treatment on January 8, 2002, for his ankle injury at which time he received an ice pack and medication. Medical personnel treated him again on January 14, 2002, when his ankle still appeared slightly swollen. Mr. Wallin's ankle was x-rayed, and he received an additional ice pack, medication, and an ankle wrap. The x-ray results of Mr. Wallin's ankle were negative, indicating no fracture or dislocation.

Mr. Wallin received additional medical treatment for his ankle on February 10, 11, and 14, 2002. On February 11, 2002, he was prescribed wider boots to help alleviate his ankle pain, and he received an ankle brace. Mr. Wallin was treated by the medical department again on March 9, 2002, for his left ankle and foot. On May 13, 2002, he again received medical attention and was prescribed additional pain medication.

Mr. Wallin received further medical treatment on June 11, 13, and 18, 2002, for his ankle. Dr. Rand Neuenschwander treated him on July 10, 2002. Dr. Neuenschwander diagnosed him with a minor ankle sprain, with no instability in the ligaments. According to the medical reports, Mr. Wallin did not apparently mention any problem with his left

8

big toe during this visit. Mr. Wallin sought treatment from the medical staff again in August, 2002, when medical staff described his ankle's swelling as mild. On September 2, 2002, Mr. Wallin was seen again for his ankle injury and was provided a heavy-duty ankle brace.

During an October 9, 2002 visit for his back and ankle, medical personnel instructed Mr. Wallin to cease playing sports or lifting weights for three days. His medications were renewed on October 16, 2002, and he received medical attention again on October 21, 2002. A second x-ray of his ankle was taken on October 25, 2002, which showed no fractures, subluxations, or other abnormalities.

Mr. Wallin was seen again for his ankle and toe on November 27, 2002, by Dr. Neuenschwander. Dr. Neuenschwander determined Mr. Wallin's left ankle joint to be stable with evidence of a minor sprain, though he could not determine whether the sprain related to the original injury of January 8, 2002, or a new injury. Dr. Neuenschwander noted that, contrary to his advice, Mr. Wallin kept playing basketball, which may have exacerbated the sprain. Dr. Neuenschwander noted that Mr. Wallin received treatment for his ankle injury in the form of ice, ace bandages, an ankle brace, special footwear, and medication. Dr. Neuenschwander did not recommend additional treatment for Mr. Wallin's minor ankle sprain.

During the November 27, 2002, medical visit, Mr. Wallin advised Dr. Neuenschwander that he suffered an earlier fracture to his left big toe. Other medical records reviewed by Dr. Neuenschwander were inconsistent with Mr. Wallin's self-

9

described history of an old fracture and indicated that he had undergone an earlier surgery to remove a bunion from his left big toe. For example, previous reports refer to the toe problem as a bunion recurrent years after a bunionectomy. Dr. Neuenschwander did not recommend treatment for the left big toe, as the injury occurred well before Mr. Wallin arrived at the correctional facility, and any remedy would be considered elective.

Medical staff examined Mr. Wallin on February 12, and 21, 2003, and again on March 8, 2003, when the medical staff examined him concerning an injury to his eyelid that he received while playing basketball. Mr. Wallin's medications were renewed on March 17, 2003. Mr. Wallin had an appointment with Dr. Neuenschwander on April 2, 2003, but did not keep the appointment. Mr. Wallin left the correctional facility soon thereafter.

Dr. Neuenschwander reviewed Mr. Wallin's August 13, 2004, MRI report and confirmed that the ligaments in Mr. Wallin's left ankle had healed such that no abnormalities existed on the MRI. Dr. Neuenschwander noted that the MRI revealed a ganglion cyst the size of a small jellybean on the ligament. Dr. Neuenschwander stated that a ganglion cyst is normally found on a tendon, not a ligament, where ankle sprains occur. According to Dr. Neuenschwander, a ganglion cyst is rarely the result of trauma, develops over years of time, and is not expected with ankle sprains. Dr. Neuenschwander concluded that the cyst cannot be logically attributed to his ankle sprain injury and stated that he anticipated it would disappear with simple aspiration.

Mr. Wallin argues that repeated misdiagnosis of his injuries and faulty treatment

over several years have contributed to his severe injuries, include the cystic mass. He maintains that the cystic mass, along with the continued deterioration of the immediate and surrounding bones, joints, and ligament have caused serious and lasting damages.

He contends that he initiated all of his at least nineteen medical visits, and that most included only blood pressure and temperature readings. The only treatment he received was ice packs and pain pills. As a result, Mr. Wallin maintains that he has suffered extreme pain and obvious toe deformity.

Mr. Wallin filed a complaint under § 1983 alleging that he had been denied adequate medical care while he was a resident of the Kit Carson Correctional Center. Mr. Wallin maintained he suffered an ankle injury on January 11, 2002, and an injury to his left foot's big toe shortly thereafter. He also charges various medical staff members and correctional facility employees with various state tort claims, including medical malpractice, negligence, and intentional infliction of emotional distress. The defendants filed various motions to dismiss and/or motions for summary judgment. The magistrate judge concluded that the record evidence failed to raise a genuine issue of material fact as to whether the defendants acted with deliberate indifference to Mr. Wallin's medical condition. He also recommended that Mr. Wallin failed to state an Eighth Amendment claim of deliberate indifference, and recommended dismissal of the claim. The magistrate judge also recommended that the district court decline to exercise supplemental jurisdiction over Mr. Wallin's state law claims and that the district court dismiss those claims without prejudice.

11

Before this court, Mr. Wallin argues that the district court erred when it granted summary judgment to the defendants because (1) there exists disputed evidence of fact as to the defendants' deliberate indifference in the treatment of his ankle and toe injuries; (2) the treatment provided by the prison's medical staff was inadequate and thus deliberately indifferent; and the district court abused its discretion when it (3) denied Mr. Wallin's request for postponement of the summary judgment rulings in light of his request for additional discovery; (4) dismissed his complaint for failure to comply with an order regarding the payment of filing fees; (5) denied Mr. Wallin's motion for appointment of an expert witness and for an extension of time to file disclosure of an expert witness; (6) recommended dismissal because Mr. Wallin did not file a "certificate of review"; (7) denied service upon John Doe III; and (8) denied his motion for a temporary restraining order.

B. Discussion

As noted above, we review the grant of summary judgment de novo, and we review procedural rulings for an abuse of discretion. We have reviewed the lengthy record and multitude of filings and rulings entered by the magistrate judge.

We reiterate that disagreements with the treatment provided by prison medical staff do not in themselves rise to the level of deliberate indifference necessary to violate the Eighth Amendment. *See Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999). Furthermore, inadvertent or negligent failure to provide medical care, however serious the consequences, does not rise to "deliberate indifference to serious

12

medical needs" and is not a constitutional violation. *See id.*; *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious . . . [Second,] a prison official must have a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quotations omitted). "In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety." *Id.* (quotation omitted). Mr. Wallin's allegations run afoul of all of these principles.

We have carefully considered the parties' materials in light of the applicable law. While we acknowledge that Mr. Wallin had numerous encounters with medical personnel over a several year period, we are unpersuaded by his claims of error and affirm the grant of summary judgment for substantially the same reasons as those set forth in the magistrate judge's thorough and well-written recommendations. We grant Mr. Wallin's request to proceed IFP.

## III. CONCLUSION

Accordingly, for the foregoing reasons, in Case No. 07-1144, we STAY consideration of the issues presented by Mr. Wallin's appeal with respect to Ms. Martel, AFFIRM the district court's grant of summary judgment to all other defendants, and GRANT Mr. Wallin's motion to proceed IFP. Also, in Case No. 07-1146, we AFFIRM the district court's grant of summary judgment to defendants, and GRANT Mr. Wallin's motion to proceed IFP. We remind Mr. Wallin that he must continue making payments

13

on his appellate filing fees until the entire balance is paid.  As to both actions, we DENY

any outstanding motions.

Entered for the Court,


Robert H. Henry
Chief Circuit Judge